UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DOMANIQUE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00268-JPH-MKK |
| | ) |
| HEATHER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER DIRECTING FURTHER PROCEEDINGS ON DEFENDANT HEATHER'S MOTION FOR SUMMARY JUDGMENT**

Domanique Johnson alleges that three Wabash Valley Correctional Facility (WVCF) officials were deliberately indifferent to his need to be placed on a lower range while on crutches in 2022, causing him to fall on the stairs. Defendant Heather seeks summary judgment on the basis that Mr. Johnson failed to exhaust administrative remedies before filing suit. Dkt. 31. For the reasons that follow, the Court gives Mr. Johnson "an opportunity to properly support" his factual assertions under Federal Rule of Civil Procedure 56(e)(1) before resolving the motion for summary judgment.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine

dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## II.
**Prison Litigation Reform Act and Exhaustion of Administrative Remedies**

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

Here, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Nurse Heather has the burden of establishing that "an administrative remedy was available and that [Mr. Johnson] failed to pursue it." *Thomas v. Reese,* 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

3

## III.
## Factual Background

The Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

The Indiana Department of Correction (IDOC) Offender Grievance Process is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 2-1 at § II. Inmates can use the grievance process to resolve concerns about "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at § IV(A). The grievance process was an appropriate venue for Mr. Johnson to raise concerns about his denial of a lower-range placement and his eventual fall.

To exhaust the grievance process's remedies, an inmate must complete four steps. First, the inmate must attempt to resolve his concern informally. *Id.* at § IV(1) (formal grievance must follow "unsuccessful attempts at informal resolutions"). Second, if the inmate is unable to achieve a satisfactory resolution informally, he must submit a formal grievance to the grievance specialist. *Id.* at § X. Third, if the inmate is dissatisfied with the grievance specialist's response, he must submit an appeal to the grievance specialist, who will transmit the appeal to the warden or the warden's designee. *Id.* at § XI. Fourth, if the inmate is dissatisfied with the warden's response, he must submit a second appeal to the IDOC's grievance manager. *Id.* at § XII. To complete the second-level appeal,

an inmate must check a box on the response paper, sign it, and submit it to the grievance specialist within five business days. Dkt. 32-1 at § XII. The grievance specialist then has five business days to transmit the appeal to the department-wide grievance manager, who must respond in writing. *Id.*

Grievances, appeals, and responses are recorded in the IDOC Records Management System (IRIS). *See* dkt. 32-1 at §§ III(I), X(B) (after receiving a grievance, the grievance specialist "shall either accept it and record it, or reject it"). The IRIS database does not acknowledge a first- *or* second-level appeal to grievance 138654. Dkt. 32-1 at 24.

Here, it's undisputed that Mr. Johnson filed a grievance and properly filed an appeal after his grievance was denied. Dkt. 32-1 at 26-27; 33. The dispute is whether Mr. Johnson completed his second-level appeal in accordance with the grievance policy. Nurse Heather maintains that Mr. Johnson did not submit the signed form indicating that he disagreed with the denial of his appeal and therefore did not complete the step required to initiate a second-level appeal. She supports that contention by designating a grievance appeal form that was rejected and signed by the warden or his designee, but not signed, dated, or checked by Mr. Johnson in the section titled, "Please check the appropriate box and return this form to the Facility Grievance Specialist." *Id.* at 26.

In response, Mr. Johnson has designated a copy of the warden's denial that is signed by him, dated April 4, 2022, and has the "disagree" box checked. Dkt. 36-1 at 2. He states that he "pursued the grievance processes the best I

could being that I signed and dated form 4/4/22 and to my knowledge turned in on time." Dkt. 36 at 2, 4.

## IV.
## Discussion

Nurse Heather argues that Mr. Johnson did not return a signed and completed copy of the warden's denial of his appeal as required to initiate a second-level appeal and therefore failed to exhaust the grievance process. She contends that the grievance appeal form designated in support of her motion, dkt. 32-1 at 26, is a true and accurate copy of the grievance appeal the warden returned to Mr. Johnson on March 30, 2022, dkt. 33 at 13, and that there is no evidence that he checked the "disagree" box, signed the form, and returned it to the grievance specialist. *Id.* She further contends that Mr. Johnson's designated versions of that grievance appeal form, *see* dkt. 1-1 at 12; dkt. 36-1 at 2, were never submitted to the grievance specialist. Dkt. 33 at 13–14.

In response, Mr. Johnson argues that he signed and believes that he timely submitted the form denying his first-level appeal, thereby completing the grievance process. Dkt. 36 at 2, 4; dkt. 36-1 at 2. Mr. Johnson's designated evidence, however, is not properly authenticated as required by Rule 56(c). *See* dkt. 47 at ¶ 4; Fed. R. Civ. P. 56(c)(2). Additionally, the statements in his summary judgment response are not sworn under penalty of perjury. *See* dkt. 36.

Under Federal Rule of Civil Procedure 56(e), the Court may give the plaintiff an opportunity to properly support or address an assertion of fact that is not otherwise properly supported. Fed. R. Civ. P. 56(e)(1). Consistent with Rule

6

56(e)(1), the Court will give Mr. Johnson the opportunity to verify his assertions and exhibits before proceeding to an evidentiary hearing. Fed. R. Civ. P. 56(e)(4).

It is fundamental that a court reviewing a summary judgment motion cannot "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources*, 14 F.4th 757, 760 (7th Cir. 2021). If Mr. Johnson supports his response with a sworn statement that he submitted his second-level appeal on April 4 under the proper grievance procedure, then an evidentiary hearing will be required, rather than summary judgment being appropriate.

## V.
## Conclusion

As explained above, Mr. Johnson is given the opportunity to support his factual assertions under Federal Rule of Civil Procedure 56(e)(1). He will have **through September 13, 2023**, to submit a verification, sworn under penalty of perjury, addressing the facts relevant to exhaustion, including whether he properly submitted his level II appeal on April 4, 2022 and whether the document attached to his response, dkt. 36-1 at 2, is a true and accurate copy of that appeal.

If Mr. Johnson cannot make these verifications in good faith, or if he does not respond in the time provided, the Court will grant Officer Nurse Heather's motion for summary judgment. *See* Fed. R. Civ. P. 56(e). If he responds, the Court will determine whether it must hold an evidentiary hearing to resolve material factual disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

**SO ORDERED.**

Date: 8/25/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DOMANIQUE JOHNSON
178369
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Austin Ryan Andreas
Bleeke Dillon Crandall, P.C.
austin@bleekedilloncrandall.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Travis W. Montgomery
Bleeke Dillon Crandall, P.C.
travis@bleekedilloncrandall.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com