UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DOMANIQUE JOHNSON,                    )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        No. 2:22-cv-00268-JPH-MKK
                                      )
HEATHER,                              )
ANGELESE,                             )
TARR,                                 )
                                      )
                    Defendants.       )

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Domanique Johnson is a prisoner currently incarcerated by the Indiana Department of Correction ("IDOC") at Wabash Valley Correctional Facility. Mr. Johnson alleges that the Defendants were deliberately indifferent to an unreasonable risk of serious injury when they failed to move him to a cell on the lower range, knowing that he would have to climb stairs to his cell on the upper range while on crutches with a severe ankle injury. Defendants have moved for summary judgment. Dkt. [75], [78]. For the reasons below, those motions are **GRANTED**.

**I.**
**Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the

1

record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to

Mr. Johnson and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all times relevant to this case:

- Mr. Johnson was an inmate at Wabash Valley in the P Housing Unit ("PHU").

- Defendant Heather Lowell-Pangallo was a Nurse on the medical staff at Wabash Valley. Dkt. 75-1 at 1 ¶ 5.

- Defendant Colten Tarr was a Correctional Officer at Wabash Valley. Dkt. 79-2 at 1 ¶ 2.

- Defendant Everado Angeles-Mora was a Correctional Sergeant at Wabash Valley. Dkt. 79-3 at 1 ¶ 2.

- Alainey Tarrh was a Correctional Officer at Wabsah Valley assigned to the North Yard night shift.[1] Dkt. 79-4 at 1 ¶¶ 2-3.

### B. Mr. Johnson's Ankle Injury and Housing Assignment

Mr. Johnson previously broke his ankle and had surgery that required pins and screws to be put into his ankle. Dkt. 79-1 at 16.

On February 7, 2022, Mr. Johnson re-injured that ankle while playing basketball during morning recreation. *Id.* at 19-20. He was immediately taken to the infirmary where he was treated by a nurse. *Id.* at 20. He initially thought that the nurse was named Heather, based on what another inmate

---

[1] Although Mr. Johnson named Officer Tarr as a defendant, Officer Tarrh answered. From discovery, it was clear that there was both an Officer Tarr and an Officer Tarrh working at Wabash Valley. Officer Tarr is the correct defendant, not Officer Tarrh; therefore, the Court only addresses defendant Tarr in this order. Officer Tarrh is not a named defendant in this case.

told him, but subsequently admitted that he was not sure what her name was. *Id.* at 22–23. His medical records show that he saw nondefendant nurse Taylor Hill, who examined the injury, applied an ace bandage, suggested use of the RICE method (rest, ice, compression, and elevation), contacted Mr. Johnson's physician, and ordered crutches and an X-ray. *Id.* at 20; dkt.75-2 at 87-89.

On February 8, 2022, Mr. Johnson was given crutches, and had X-rays taken of his ankle which showed broken screws and loosened hardware in the injured ankle. *Id.* at 63; dkt. 79-1 at 16, 26–27. Mr. Johnson did not recall seeing a nurse on this date. Dkt. 79-1 at 31.

Mr. Johnson's cell was located on the upstairs range of PHU. *Id.* at 15. To get to his cell he would hold the railing and use his right foot to climb or hop up the stairs. *Id.* at 33.

Mr. Johnson informed Officer Tarr of his injury and concerns with being in an upper range cell. *Id.* at 35-36.[2] In response, Officer Tarr called Sgt. Angeles-Mora to inform him of the situation. Dkt.79-1 at 37; dkt. 79-2 at 1. Sgt. Angeles-Mora later arrived at PHU and asked Mr. Johnson why he was on the top floor with crutches, and Mr. Johnson responded, "you tell me." Dkt. 79-1 at 35, 39. Sgt. Angeles-Mora left shortly thereafter to go to the infirmary

---

[2] Mr. Johnson stated that this conversation happened on February 8, dkt. 79-1 at 35–36, while Officer Tarr and Sgt.Angeles-Mora testified that they were not working on February 8. Dkts. 79-2, 79-3. Their testimony is corroborated by Shift Rosters, business records that are created and used by Wabash Valley for operational purposes. Dkt. 79-5. Regardless, as discussed later in this order, the designated evidence shows that on the day Officer Tarr and Sgt. Angeles-Mora learned of Mr. Johnson's situation—whether it was February 8 or February 9—they took steps to have him transferred to a cell on the lower range.

to talk to medical staff about Mr. Johnson's injury, which he was required to do as part of the procedure to assign Mr. Johnson to a new cell. *Id.* at 39; dkt. 79-3 at 2–3.

Mr. Johnson attempted to go up the stairs to return to his cell, holding his crutches.  Dkt. 79-1 at 43. Officer Tarr saw this and called Sgt. Angeles-Mora.  Dkt. 79-2; dkt. 79-3. Mr. Johnson fell, further injuring his ankle, his back, and his hand, causing him extreme pain. *Id.* at 44. He was taken to the infirmary. *Id.* at 45.

When Mr. Johnson returned to the PHU, he was reassigned to a lower range cell in the PHU. *Id.* at 55.

### III.
### Discussion

Mr. Johnson alleges that Defendants were deliberately indifferent to an unreasonable risk of serious injury when they failed to have him moved him to a cell on the lower range, knowing that he would have to climb stairs to his cell on the upper range while on crutches with a severe ankle injury.

"The Eighth Amendment protects an inmate from a government's actor's 'deliberate indifference to his basic needs.'"  *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *see Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013) ("deliberate indifference to an imminent danger of injury to a prisoner [] gives him a valid claim to relief under section 1983"). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious . . . condition to which (2) a state official was deliberately,

that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).  "Under this standard, conduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.,* 'the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'"" *Board,* 394 F.3d at 478 (citations omitted).  In other words, Mr. Johnson "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

### A.  Nurse Heather Lowell-Pangallo

Nurse Lowell-Pangallo argues that she is entitled to summary judgment because she was not involved in treating Mr. Johnson's ankle injury before he fell. Dkt. 76. Mr. Johnson contends that summary judgment should be denied because medical staff was aware of his injury and that he needed to be moved to a bottom range cell, and that "the nurses all know one another and are familiar with [his] injury." Dkt. 87 at 2.

"Individual liability under § 1983 ... requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Here, Mr. Johnson testified that "[he did] not know what exact nurse it was" and "[he] thought her name was Heather, just by another inmate telling [him]" but now that he had seen who Nurse Heather is, "[he] think[s] it was a different individual." Dkt. 79-1 at

6

17-23.  Defendants' designated evidence shows that Mr. Johnson was treated on February 7 by nurse Taylor Hill, on February 9 by Dr. Byrd, and was not treated at all by Nurse Lowell-Pangallo for his ankle injury before he fell down the stairs.  Dkt. 76 at 2–4.  Mr. Johnson admits that "being unfamiliar with the names of particular staff, [he] may have added [Nurse] Heather due to confusion of descriptions by other witnesses." Dkt. 87 at 2.  Mr. Johnson therefore has not designated evidence would allow a reasonable jury to conclude that Nurse Lowell-Pangallo was involved in his treatment or that she had authority to have him moved to a cell on the lower range.  *See* dkt. 75-1 at 2; dkt. 75-2; *Machicote v. Roethlisberger*, 969 F.3d 822, 828 (7th Cir. 2020) (affirming grant of summary judgment for defendant that did not have knowledge of plaintiff's treatment or authority to intervene in it).  Nurse Lowell-Pangallo is therefore entitled to summary judgment on this claim.

### B. Officer Tarr and Sergeant Angeles-Mora

Officer Tarr and Sgt. Angeles-Mora argue that they are entitled to summary judgment because they responded reasonably to (1) learning of Mr. Johnson's ankle injury; and (2) learning that Mr. Johnson fell down the stairs while trying to get to the upper range.

"Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (cleaned up).  A prison official "violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to an

7

inmate.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Here, Defendants do not argue that requiring Mr. Johnson to navigate stairs on crutches with an ankle injury was not a hazard posing a significant risk of severe harm, so the Court accepts that it was. *See* dkt. 80; *Anderson*, 835 F.3d at 683 (requiring prisoner to descend slippery and garbage-strewn stairs while handcuffed and without assistance was a hazard). Instead, they argue that Officer Tarr and Sgt. Angeles-Mora responded reasonably when they became aware of the problem. In response, Mr. Johnson argues that Officer Tarr and Sgt. Angeles-Mora "had opportunity to make arrangements that could of prevented any injury. They both knew of my condition and also eye witnessed my fall." Dkt. 86 at 2.

The designated evidence shows that Officer Tarr did not have authority to reassign Mr. Johnson to a new cell. Dkt. 79-2. So, when Officer Tarr learned of Mr. Johnson's injury, he contacted Sgt. Angeles-Mora who could begin the process of seeking authorization to transfer Mr. Johnson to the lower range. *Id.*; dkt. 79-3; *see* dkt. 79-1 at 35–37. Sgt. Angeles-Mora could not authorize an immediate transfer, but had to first speak to medical staff, Mr. Johnson's caseworker, and the Count Office and Shift Office for final approval. Dkt. 79-3. These steps are to ensure that cell locations and cellmate assignments do not

pose safety or security risks. *Id.* The designated evidence shows that upon learning of Mr. Johnson's injury, Sgt. Angeles-Mora began taking the steps needed to reassign Mr. Johnson to a bottom range cell. *Id.*

From the designated evidence, a reasonable jury could not conclude that Officer Tarr or Sgt. Angeles-Mora were deliberately indifferent to the fact that Mr. Johnson had an injury that required the use of crutches and would have difficulty navigating the stairs to the upper range. On the contrary, the designated evidence shows that they "took measures reasonably calculated to address the risk" presented to Mr. Johnson. *See Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023). Officer Tarr notified Sgt. Angeles-Mora, who then began the process of obtaining required approvals for Mr. Johnson to be transferred to the lower range.

Although the record does not reveal the precise timing of the sequence of events, Mr. Johnson has not designated evidence from which a jury could find that Officer Tarr and Sgt. Angeles-Mora did not take responsive action. Similarly, he has not designated evidence from which a jury could find that there was an unreasonable delay between when Officer Tarr and Sgt. Angeles-Mora learned of the dangerous situation—that Mr. Johnson would have to navigate the stairs while on crutches to get to his cell on the upper range—and when they "took measures reasonably calculated to address the risk," *Hunter*, 73 F.4th at 566.

Defendants' designated evidence shows that Officer Tarr and Sgt. Angeles-Mora were not at work on February 7 or 8. Dkts. 79-2; 79-3; 79-5. In

his response, Mr. Johnson does not designate evidence that would show otherwise. Instead, he appears to tacitly concede that the correctional staff he spoke with on February 7 and 8, were not Officer Tarr and Sgt. Angeles-Mora. Dkt. 86 at 1 ("Even if days prior I talked to a different c/o about my concerns of dangerous conditions with me on crutches."). And putting the exact date aside, Mr. Johnson designates no evidence from which a jury could find that Officer Tarr and Sgt. Angeles-Mora learned of Mr. Johnson's injury and did nothing in response. The designated evidence supports only the conclusion that Officer Tarr contacted Sgt. Angeles-Mora on the same day he learned of Mr. Johnson's situation and that Sgt. Angeles-Mora initiated the process of having Mr. Johnson transferred to a lower range cell on the same day Officer Tarr contacted him.

* * *

It's understandable that Mr. Johnson is frustrated he wasn't moved to a cell on the lower range immediately after he injured his ankle on February 7 and feels strongly that someone should have made the move happen sooner. He noted that "staff were aware of [him] being on top floor cell when crutches were assigned." Dkt. 87 at 3. But liability under Section 1983 requires personal involvement for individual liability. *See Colbert*, 851 F.3d at 657. Mr. Johnson therefore cannot pursue claims against "as a whole 'Wabash Valley Corrections'", dkt. 86 at 2, or seek to hold any of the named defendants liable for what their co-workers may have done or not done. Also, in addition to personal involvement, Mr. Johnson would have to show that a named

10

defendant "must have known that [he] 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'"' *Johnson*, 5 F.4th at 824. He has not made this showing, so the Defendants are entitled to summary judgment.

## IV.
## Conclusion

For the reasons stated above, Defendants' motions for summary judgment are **GRANTED**. Dkts. [75], [78].

The **Clerk is directed** to update the docket to reflect that the proper spelling of Defendants' names is (1) "Heather Lowell-Pangallo" instead of "Heather," (2) "Colten Tarr" instead of "Tarr" and (3) "Everado Angeles-Mora" instead of "Angelese."

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 3/20/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DOMANIQUE JOHNSON
178369
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

All electronically registered counsel

11